GENERAL FIRE EXTINGUISHER CO. v. LAMAR et al.

(Circuit Court of Appeals, Fifth Circuit. December 5, 1905.)

No. 1,476.

1. EQUITY—EXCEPTIONS TO MASTER'S REPORT.

Exceptions to the report of a master in chancery are in the nature of a special demurrer, and must point out specifically the errors relied on, and findings and parts of the report not so specifically excepted to are to be taken as admitted.

[Ed. Note.—For cases in point, see vol. 15, Cent. Dig. Equity, § 910.]

2. SALES—RESERVATION OF TITLE—VALIDITY UNDER GEORGIA STATUTE.

Under Code Ga. 1895, §§ 2776, 2777, which require every contract of conditional sale by which the title to property delivered is reserved in the seller until the purchase price has been paid to be executed and attested in the same manner as mortgages on personal property and recorded within 30 days, in order for such reservation to be valid as against third parties, such a contract not so executed and attested is not entitled to record, and the reservation is ineffectual as against creditors of the purchaser, at least where it is not shown that they had actual notice thereof.

3. APPEAL—EQUITY—FINDINGS OF MASTER—PRESUMPTION OF CORRECTNESS.

A finding by a master that certain appliances were attached to a factory must be taken as correct in determining whether or not such appliances became subject to a prior mortgage on the building and machin-

141 F.—23

ery therein, where it was not excepted to, and there is no evidence show-
ing the character of the appliances, or whether or not they were detach-
able.

Appeal from the Circuit Court of the United States for the Southern
District of Georgia.

The following is the opinion of Speer, Circuit Judge, in the Circuit
Court:

In the early part of the year 1900 the Millen Cotton Mills undertook the
erection and equipment of a cotton factory at Millen, Ga. The company pur-
chased a tract of land, constructed mill buildings, and on various dates during
that year made contracts for the purchase and installation of appropriate
machinery. Among the contracts was that now before the court. This con-
tract was made on the 29th day of August, 1900, and under it the General
Fire Extinguisher Company agreed to furnish and erect a system of automatic
sprinklers. It appears that the several contractors and furnishers of ma-
chinery completed the installation of the cotton mill equipment about June,
1901. The Millen Cotton Mills not being able to pay for the machinery and
equipment placed in the mill buildings, certain creditors recorded mechanics'
liens, aggregating $44,945.09. The General Fire Extinguisher Company, how-
ever, did not avail itself of this opportunity afforded by the law of Georgia.
In January, 1902, the William Firth Company and other contractors and ma-
terialmen, who had recorded mechanics' liens as above stated, filed a bill
in equity to establish and enforce them. With this bill a number of inter-
ventions were filed. Among them was that of the Commercial Bank of
Augusta, substituted trustee, in behalf of the holders of bonds issued under a
mortgage covering the real estate and manufacturing plant of the Millen Cot-
ton Mills. This mortgage was made October 31, 1900, recorded November
14th of the same year, and was for $40,000. Another intervention was that
of the General Fire Extinguisher Company, now under consideration. The
issues arising in the cause were referred to a special master, who had reported
in substance that the sum realized from the sale of the property of the de-
fendant, to wit, $90,000, should be applied, first, to the payment of certain
laborers and taxes; second, to the payment of claims secured by the mechan-
ics' liens aggregating $44,945.09 principal; third, to the payment of the mort-
gage indebtedness of $40,000 principal; and, fourth, to the payment of numer-
ous unsecured claims, among them that of the intervener. The General Fire
Extinguisher Company has filed several exceptions to the master's report, but
relies only on the first, namely: "The prayer of the claimant that it be per-
mitted to retake and remove the machinery furnished by it, in case it is not
allowed a special lien on said machinery, must be denied."

Said ruling is contrary to law and equity, and is error because the written
contract between claimant and the Millen Cotton Mills, which was admit-
ted in evidence without objection and which is not disputed, contains the
following language: "It is agreed that space for materials and facilities for
the prosecution of the work shall be accorded on the premises, and that the
General Fire Extinguisher Company shall have lien upon the materials and
equipment until full payment shall have been made therefor, with right to
enter upon the premises and remove the same in case of any default in pay-
ment." And because said contract contains the following language: "It is
also understood that any loss or damage by fire which may occur to our ma-
terials and equipment while in your premises shall be borne by you."

Claimant alleges that the special master erred in not allowing its prayer,
since it appears from the evidence recited that it was the intention of the
parties that the material and equipment should remain the property of claim-
ant until paid for, and because it was also stipulated that claimants
'shall have a lien' upon said materials and equipment until full payment shall
have been made, and because it was further stipulated that the claimant
should have the right to enter upon the premises and remove said materials
and equipment if not paid for. The above quoted language is contained in

said contract introduced in evidence which is marked "Exhibit No. 16," and is attached to an intervention filed by claimant in said cause. Said contract is referred to and made a part of the record on page 23 of the report of the special master." It is well established that exceptions should be so framed as not merely to allege error in general terms, but to enable the court to decide distinctly on each point in dispute. Adams, Equity, § 386. As stated in Sheffield, etc., Ry. Co. v. Gordon, 151 U. S. 291, 14 Sup. Ct. 343, 38 L. Ed. 164: "Proper practice in equity requires that exceptions to the report of a master should point out specifically the errors upon which the party relies." Exceptions to reports of masters in chancery are in the nature of a special demurrer, and the party objecting must point out the error, otherwise the part not excepted to, will be taken as admitted. Story v. Livingston, 13 Pet. 359, 10 L. Ed. 200, approving Wilkes v. Rogers, 6 Johns. 566.

The sole question, therefore, properly before the court is: Did the master, in view of the language and terms of the contract between the intervener and defendant, and for the reasons stated in the foregoing exception, err in finding that the intervener had no right to take and remove the equipment furnished by it to the Millen Cotton Mills? In order for the intervener to have the right to retake the equipment furnished by it, title thereto must have been reserved. Of course, as between the intervener and the defendant the language quoted from the contract and appearing in the exception is sufficient to retain the title in the intervener. But in this case the Millen Cotton Mills became insolvent and the rights of creditors intervened. Now is the reservation of title good as against such creditors? The conclusion of the master is: "The agreement was not executed and recorded as required by the laws of Georgia so as to reserve title in the claimant." The law of Georgia, applicable to conditional sales of this character is: "Whenever personal property is sold and delivered with the condition affixed to the sale, that the title thereto is to remain in the vendor of such personal property until the purchase price thereof shall have been paid, every such conditional sale, in order for the reservation of title to be valid as against third parties, shall be evidenced in writing, and not otherwise. And the written contract of every conditional sale shall be executed and attested in the same manner as mortgages on personal property; as between the parties themselves the contract made by them shall be valid, and may be enforced whether evidenced in writing or not." Section 2776, Code Ga. 1895. "Conditional bills of sale must be recorded within thirty days from their date, and in other respects shall be governed by the laws relating to the registration of mortgages." Section 2777, Code Ga. 1895.

Reference to the contract shows that it is not attested by any witness, official or otherwise, as required by section 2776 above quoted, and although dated August 29, 1900, was not recorded until January 9, 1902. The intervener having failed to comply with the requirements of the provisions of the Code of Georgia above quoted, the result is that as to third parties, it was an absolute sale. This being true, in the absence of proof that subsequent creditors had actual notice of such conditional contract, the master seems justified in concluding that the intervener was not entitled to retake and remove the equipment furnished by it which had become a part of the Millen Cotton Mills' manufacturing plant. Indeed, it would seem that, even if subsequent creditors had actual notice of the contract by which the intervener sought to reserve title, the sale would yet be considered absolute. The law of Georgia just quoted requires that every such condition sale "shall be executed and attested in the same manner as mortgages on personal property," and "must be recorded within thirty days from their date"; otherwise the reservation of title is not valid as against third parties. There is no qualification as to this language. Mortgages on personal property are required by section 2724 of the Code of Georgia of 1895, to be "executed in the presence of, and attested by or proved before a notary public or justice of any court in this state, or a clerk of the superior court." It has been held by the Supreme Court of Georgia that such a conditional contract may be attested by a witness, not one of the officials above named, because there being no such witness, the contract may be "proved" as provided for in section 2724, supra.

The same court has also held that such a contract so witnessed was valid as to subsequent purchasers having actual notice. Hill v. Ludden & Bates, etc., 113 Ga. 320, 38 S. E. 752. "Expressio unius exclusio alterius est." The object of the record is, of course, to give constructive notice of the contract. If such contract is not executed and attested as required by law, it cannot be properly recorded, and say the Supreme Court of this state: "Where a paper which the law requires shall be attested as a mortgage on personalty in order to admit it to record was not attested at all, the actual record of it was notice to nobody." Cunningham v. Cureton, 96 Ga. 489, 23 S. E. 420. Speaking of such a contract, the same court in Merchants v. Cottrell, 96 Ga. 168. 23 S. E. 127, hold that "the plain import of the statute is that attestation is essential to the validity of the contract as against third persons," and state that the object of the statute is to "prevent frauds and perjury which might be practiced by debtors and others in collusion with them to defeat creditors seeking to subject to their claims property apparently belonging to the debtor." But if the attempted reservation of title is not entirely void as to them, did the creditors have actual notice? If true, this fact should have been brought to the attention of the court by exception to the master's report, with proper reference to the testimony relied upon to establish it. As no such exception is made, it is presumed that the evidence of this character was not submitted to the master, and the report would seem conclusive.

In his argument, solicitor for the intervener contends that the reservation of title in its contract is good certainly as against the lien of the mortgage made on October 31, 1900, because, he states, the equipment furnished by the intervener was not placed in the plant of the defendant until after the date of the execution of the mortgage, that no credit was extended by virtue of the equipment, and that being movable personalty, would not become subject to the mortgage as after-acquired property. It will be observed in the first place that the property of the Millen Cotton Mills was sold under a foreclosure of the mortgage referred to, but was sold by virtue of the foreclosure of the special liens on the factory of the defendant, given to the materialmen and manufacturers of machinery who had recorded mechanics' liens, under section 2304 of the Code. The special liens were held by the master to be superior to the lien of the mortgage, and this ruling has not been excepted to. Then, since the master finds that the equipment furnished by the intervener was "attached to the factory," it became subject to the special liens of the materialmen and manufacturers of machinery, unless they had actual notice that title had been reserved in the seller. It is not in dispute that the equipment was in the factory building at the time these special liens attached, nor is it contended that these lienors had notice of such attempted reservation of title. It follows, then, that as to those the sale was absolute. The equipment furnished by intervener became a part of the factory on which these special liens attached. The special liens were foreclosed on the entire factory of the defendant, the entire factory was sold to satisfy said special liens, and the equipment furnished by intervener being by absolute sale a part of such factory, the intervener for all time lost its right to physically retake and remove such equipment.

Since the intervener only claims the right to retake the equipment, we might as well stop here. Since in the argument it is contended that the reservation of title in said contract is superior to the lien of the mortgage, it may be argued that in equity the intervener should be paid before the bondholders. There is no issue raised in the exceptions on this point. It, however, appears that the contract with the intervener was made on August 29, 1900, and attached to the contract is an itemized account of the equipment, which is dated October 9, 1900. The mortgage is dated October 31, 1900, and covers "the machinery now being placed in the factory building" and other machinery "to be acquired from time to time" thereafter. By reference to the evidence taken before the master, it appears also that the equipment furnished by intervener was completely installed in June, 1901. From these facts, thus informally brought to the attention of the court, the inference is sought to be made that the machinery was not being placed in the factory building at the time of the mortgage, and that the equipment being movable,

that it never became subject to the mortgage. Was the machinery actually in or being placed in the factory building at the date of the mortgage? Was credit extended by the mortgagee on account of such equipment? Did the trustee of the mortgage have actual notice of the terms of the contract made with intervener on August 29, 1900? The evidence is silent upon these important matters. Suppose the equipment was furnished after the execution of the mortgage, or suppose the trustee under that mortgage had actual notice of the contract; was the equipment of such character as to become an integral part of the factory of the defendant, and as such would it be covered by the mortgage? On this question the evidence is also silent. No evidence is referred to to sustain this contention. The master reports that such equipment became "attached to the factory," and this finding is not excepted to by the intervener.

Now, if the equipment was placed in the factory after the execution of the mortgage, did it become affixed to the manufacturing plant in such manner that it became subject to the lien of the mortgage on such plant? It appears from the specifications attached to intervener's contract that it was a system of sprinklers, composed of hydrants, valves, suction pipes, tanks, steam and exhaust connections with fire pump, etc. The master reports that this system is "attached to the factory." There is no evidence showing the precise character of this equipment or how it is attached to the plant of the defendant. In Cunningham & Co. v. Cureton, 96 Ga. 489, 23 S. E. 420, it was held that: "Machinery such as planers, molders, belting, shafting, and the like, placed in and attached to a mill in order to carry out the obvious purpose for which it was erected, or to permanently increase its value for use as a manufacturing establishment, and not intended to be moved about from place to place, but to be permanently used with the building, becomes a part of the realty, although such machinery may be removable without injury either to itself or the building." In Porter v. Pittsburg Steel Company, 122 U. S. 267, 7 Sup. Ct. 1206, 30 L. Ed. 1210, where there was an attempt to reserve title in railroad bridges, the Supreme Court held: "The bridges became a part of the permanent structure of the railroad, as much so as the rails laid upon the bridges or upon the railroad outside of the bridges." The court continues: "Whatever is the rule applicable to locomotives and cars and loose property susceptible of separate ownership and of separate liens, and to real estate not used for railroad purposes, as to their being unaffected by a prior mortgage given by a railroad company covering after-acquired property, it is well settled, in the decisions of this court, that rails and other articles which become affixed to and part of a railroad covered by a prior mortgage, will be held by the lien of such mortgage in favor of bona fide creditors as against any contract between the furnisher of the property and the railroad company, containing stipulations like those in the contracts in the present case." A number of cases are cited, among them Fosdick v. Schall, 99 U. S. 235, 25 L. Ed. 339.

Is, then, the apparatus furnished by the intervener such an integral part of the manufacturing plant as to make the attempted retention of title ineffective as against the lien of the mortgage? There is, as we have seen, no evidence as to the character of this apparatus or as to its detachability from the plant, and yet the court not only required the purchasers of this plant to give bond to secure the rights of the General Fire Extinguisher Company in case they should be established by proof, but also directed an order of re-reference to the master to take testimony so that this proof could be taken, and the claimant have the opportunity to support if it could its claim for recaption. The special master went forward with his inquiry, had two hearings, and took much testimony. Notwithstanding this, the claimant appeared at this term of the court and applied for and obtained an order canceling the order of re-reference and all the proceedings taken thereunder. Thus it appears that the court has evinced its solicitude to afford the opportunity for a thorough investigation, and actually took order so that the costs of claimant, except for its witness fees, would not have been increased. Why claimant put aside this opportunity is apparently due to a difference between interveners' solicitors, but the result is that the court is without evidence in support of the claim. To sum up the matter, the incurable defect of the claim-

ant's case in the present condition of the record is that no evidence has been furnished in view of which it would be appropriate to make applicable the principle in Fosdick v. Schall, 99 U. S. 235, 25 L. Ed. 339, and Central Trust Co. v. Marietta & North Ga. R. R., 48 Fed. 874, 1 C. C. A. 133. In both cases and in other cases the property which the claimant was allowed to retake was shown to be detachable in its character.

The appeal made that the purchasers of this property should not be permitted to retain the attachment for extinguishing fires because it has not been paid for as contrary to equity cannot in this case be maintained. Equity follows the law, and the law is that, if a vendor desire to retain title to his property, that desire must be evidenced by a contract executed in a certain manner and recorded, so that all persons subsequently giving credit on the faith of it to the purchaser should have notice that his title is not good. It is also true that the claimant who excepts has not set out any evidence in support of his exceptions conformably to the rule. This is perhaps due to the fact that, although the court has given claimant every opportunity to take testimony, there was no evidence in the record on this subject which could have been set out. The court might with a strict regard for the law in the present state of the record wholly deny the claim made by the General Fire Extinguisher Company. It is, however, a high prerogative of the court of equity to do equity even when the rights of complainants have been obscured by neglect, inadvertence, or mistake. The fact is apparent that the General Fire Extinguisher Company with a claim of the value of $3,500, notwithstanding the effort of the court to afford it, has not had its claim properly presented.

This being true, the court will afford by its decree the opportunity to the claimant to make application anew for a reference in order that proper pleadings may be submitted and evidence taken in support of its claim, with equivalent opportunities to the defendant. If it does this within 10 days, such reference may be ordered. If it fails to do so, the report of the special master denying the claim will be ordered confirmed.

Henry A. Alexander and Shepard Bryan, for appellant.

W. K. Miller and E. H. Callaway, for appellees.

Before PARDEE and SHELBY, Circuit Judges, and MAXEY, District Judge.

PER CURIAM. We find no error in the disposition of this case in the Circuit Court, and its judgment is therefore affirmed.